# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Leslie Nyholm,                                          Civil No. 08-1356 (DWF/RLE)

        Plaintiff,

v.                                                      **MEMORANDUM**
                                                       **OPINION AND ORDER**

International Precision Machining, Inc.,

        Defendant.

_____

Bradley L. Doty, Esq., and John C. Syverson, Esq., Stempel & Doty PLC, counsel for Plaintiff.

Debra L. Weiss, Esq., and Mary M. L. O'Brien, Esq., Meagher & Geer, PLLP, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court upon a Motion for Summary Judgment brought by Defendant International Precision Machining, Inc. ("IPM"). Plaintiff Leslie Nyholm ("Nyholm") opposes the motion. For the reasons set forth below, the Court grants IPM's motion.

## BACKGROUND

IPM is a machine shop that makes transmission components and gears for customers in the heavy equipment and agricultural industries. Nyholm began working in IPM's turning department as a machine operator on September 12, 2005.

Within her first few months of employment, Nyholm experienced back pain. Under IPM's policies she was not yet entitled to time off, but she requested and received time off for medical appointments. Nyholm presented a note from a physician in May 2006, indicating that she could not work more than eight hours per day due to her back pain. Nyholm became pregnant in May 2006 and, as a result of her pregnancy, was unable to continue taking medication for her back pain. Nyholm informed IPM that she was pregnant in May 2006. Nyholm presented a physician's note to IPM in early September 2006, which restricted her to performing eight hours of work per day and prohibited her from lifting more than 15 pounds. Nyholm had a conversation with Cheryl Meyer ("Meyer"), IPM's human resources director, about the restrictions. Meyer followed-up with Nyholm's doctor, and the doctor sent IPM a more detailed note regarding Nyholm's restrictions.

Nyholm experienced performance problems throughout her tenure with IPM, chiefly related to her scrap rate.[1] Nyholm had a performance review in May 2006, which noted this problem. Nyholm was given an overall performance rating of four out of a possible score of ten. The comment section to the performance review noted that Nyholm:

> had a slow start based on the experience she stated she was bringing to IPM. Her efficiency has improved with experience. She still has too many mis loads [sic]. [Quality Control] has an alert to watch her parts more than normal.

---

[1] Nyholm also had difficulty with attendance issues, but after she was warned about attendance, this problem was largely resolved.

(Decl. of Debra L. Weiss in Supp. of IPM's Mot. for Summ. J. ("Weiss Decl.") ¶ 13, Ex. L.)  A handwritten note on her performance review indicates that Nyholm did not receive a raise.  IPM also began monitoring rates of scrap for its employees.  Nyholm's scrap rate was 27% higher than the next highest employee, a scrap rate that cost IPM more than $1,000.  Around September 13, 2006, another employee of IPM, Paige Ovick ("Ovick"), reported that Nyholm said she was intentionally scrapping parts in the hope that she would be transferred off her present project.  Ovick provided a written statement regarding the conversation to IPM.  Nyholm was terminated on September 15, 2006.

Nyholm asserts claims of pregnancy discrimination and retaliation under Title VII. She also asserts claims for wrongful discharge and for intentional infliction of emotional distress.[2]

## DISCUSSION

## I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.,* 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

---

[2]      Nyholm also brought a claim under the Family Medical Leave Act ("FMLA") but has dismissed this claim because IPM does not have a sufficient number of employees to qualify as an employer under the FMLA.  29 C.F.R. § 825.105(e).

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Planned Parenthood of Minn./South Dakota v. Rounds,* 372 F.3d 969, 972 (8th Cir. 2004); *Fenney v. Dakota, Minn. & E. R.R. Co.,* 327 F.3d 707, 711 (8th Cir. 2003). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256.

## II.    Plaintiff's Claims

### A.    Title VII

#### 1.    Discrimination Claim

Title VII makes it an unlawful employment practice to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  The term "because of sex" includes "because of . . . pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).  An unlawful employment practice is established when a complaining party demonstrates that sex (including pregnancy) was "a motivating factor" for a discharge, even though other factors also motivated the discharge.  42 U.S.C. § 2000e-2(m).

A plaintiff may survive a motion for summary judgment in two ways-by presenting "direct evidence" of discrimination or by creating "the requisite inference of discrimination," including "sufficient evidence of pretext," under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).  *See Roberts v. Park Nicollet Health Svcs.*, 528 F.3d 1123, 1127 (8th Cir. 2008).  "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action."  *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004) (internal quotations omitted).  Direct evidence of employment discrimination must be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process.  *Clearwater v. Indep. Sch. Dist. No. 166,* 231 F.3d 1122, 1126 (8th Cir. 2000).

The only evidence in the record that could arguably be characterized as direct evidence of discrimination involves an interaction between Nyholm and Meyer.  Nyhom contends that Meyer confronted her and was angry with her after Nyholm presented her pregnancy related work restrictions on September 8, 2006.  Meyer testified that she spoke

with Nyholm about her restrictions and asked the length of time the restrictions would apply. Meyer also indicated that Nyholm instructed her to contact Nyholm's physician to learn more about the restrictions and, after Meyer contacted the doctor, the doctor faxed a more detailed note regarding the restrictions. Determining the nature of a restriction and the length of time a restriction will apply is not, by itself, a discriminatory action.

Nyholm also contends that Meyer stated that the work restrictions were "ridiculous" and that Meyer "had never heard of such a thing." (Weiss Decl. ¶ 7, Ex. F at 207.) Even assuming this occurred, such a statement without other evidence is a "stray remark" and is insufficient to constitute direct evidence that Nyholm's termination was related to her pregnancy. *See Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809-810 (8th Cir. 2007) (concluding that supervisor's statement to nurse employee that she had "better take precautions so both you girls don't end up pregnant [because clinic could not] have both nurses gone at the same time," was a stray remark and not direct evidence of discrimination); *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609 (8th Cir. 2006) (concluding statement to pregnant employee that it was a bad management decision to take twelve weeks of maternity leave and statement that supervisor was surprised employee was returning to work were not direct evidence of discriminatory motive).

As Nyholm has not produced direct evidence of discrimination, she must proceed under the burden-shifting approach in *McDonnell Douglas*. Under this analysis, the plaintiff must establish a prima facie case of employment discrimination. *McDonnell Douglas*, 411 U.S. at 802. If established, the employer may advance a legitimate, nondiscriminatory reason for the employee's discharge. *Id.* The burden of production

then returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination. *Id.* at 804.

Even if the Court assumes that Nyholm has presented a *prima facie* case, her claim cannot succeed because IPM has shown it had a legitimate, nondiscriminatory reason for terminating her. The record shows that Nyholm continually had difficulty with machining projects and generated excessive scrap. Nyholm contends that the majority of her scrap was caused by circumstances beyond her control and that there was no performance reason for her termination. This argument is not supported by the record.

IPM tagged all scrap parts and tracked scrap on a per employee basis. Nyholm had more scrap than any other employee at IPM; her scrap rate was 27% higher than the next highest employee. In an effort to investigate the reason for her excessive scrap, Nyholm's supervisor had an employee with substantially less experience than Nyholm run the job to which Nyholm was assigned, and this employee was able to complete the project without any problems. Nyholm's continued misloads were noted in her review, and the review stated that quality control personnel were required to watch her output more than that of other employees.

Further, Nyholm acknowledges that she had a problem with generating scrap. Nyhom testified in her deposition that she had scrap issues and problems running her machine from the time she started at IPM in September 2005. (Weiss Decl. ¶ 7, Ex. F at 151.) She testified that she also had a scrapping problem on a job for Columbia Gear in early May 2006. (*Id*. at 163-64.) When asked if she had any explanation as to the reason that she continued to experience problems, she stated: "No, I do not." (*Id*. at 176.) She

agreed that having over $1,000 in scrap would be a high number and that at her previous employer such a scrap rate would be a cause for concern. (*Id.* at 173-74.)

In addition, IPM's decision to terminate Nyholm was also based, at least in part, on Ovick's report in September 2006 that Nyholm indicated she was intentionally scrapping parts. Nyholm disputes that she made this statement. The relevant inquiry, however, is not whether she made the statement, but whether IPM reasonably believed she had. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008). Nyholm's supervisors indicated that they believed Ovick because the alleged statement provided an explanation consistent with Nyholm's continuing high scrap rate and that Ovick's report solidified the decision to terminate Nyholm.[3] Even without Ovick's report, however, Nyholm's excessive scrap rate was a legitimate reason for her termination.[4]

Nyholm also has not established that IPM's proffered reason for her termination was pretext. Nyholm's primary evidence of pregnancy discrimination is the timing between her presentation of her pregnancy-related work restrictions and her termination. When asked at her deposition what facts supported her pregnancy discrimination claim, she stated, "I guess my pregnancy note," and noted that she was terminated a few days

---

[3]     Nyholm's deposition testimony regarding her termination by supervisor Darrin Foote ("Foote") is consistent with IPM's explanation that Ovick's statement was an additional ground, rather than the sole basis, for her termination. Nyholm testified that Foote handed her Ovick's written account of the conversation and told her "this tops it off" or "this is what put it over the top." (Weiss Decl. ¶ 7, Ex. F at 189, 194.)

[4]     The termination notice also noted Nyholm's "bad attitude" as a reason for termination, but Foote indicated that the primary reason for her discharge was Nyholm's scrap rate. (Weiss Decl. ¶ 5, Ex. D at 206-7.)

after she presented the note.  (Weiss Decl. ¶ 7, Ex. F at 224.)  The Eighth Circuit has cautioned against finding discriminatory motive based on temporal proximity alone and examines such proximity in connection with other evidence.  *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001).  Nyholm testified she was not aware of any other evidence that she was terminated because of her pregnancy, and the record reflects that she had presented work restrictions to IPM before without receiving adverse consequences.[5]  The record also reflects that Nyholm informed IPM personnel that she was pregnant in May 2006 and that she was not terminated until September 2006, thereby blunting Nyholm's argument regarding temporal proximity. This evidence is, therefore, insufficient to show that IPM's reason for her termination was a pretext for discrimination.

Nyholm further contends that IPM's explanation was a pretext because IPM had never before terminated an employee for having a high scrap rate and that this was not a legitimate reason for termination.[6]  This argument is contradicted by Nyholm's admission that a scrap rate like hers was high and a cause for concern.  Further, Nyholm's scrap rate was higher than any other employee at IPM and had been a problem throughout her

---

[5]  Nyholm contends that Foote began "shunning" her by waving his hand at her and refusing to talk to her.  Nyholm stated, however, that this occurred not because of the pregnancy, but was related to her poor performance when she "got wrote up."  (Weiss Decl. ¶ 7, Ex. F at 211.)

[6]  Nyholm also notes that she had a high productivity rate, an assertion that is subject to some contradiction in the record.  Even assuming that Nyholm's productivity rate was high, Nyholm has not shown that this positive aspect of her performance outweighs other performance concerns.

employment.  Though Nyholm acknowledges that she had problems with scrapping parts and was given poor performance review she characterized as "fair," she testified that she did not believe she would be terminated because she was improving.  (Weiss Decl. ¶ 7, Ex. F at 195.)  Nyholm's misunderstanding of the effect of her scrap rate, however, does not give rise to an actionable claim.  IPM is entitled to summary judgment on this claim.

### 2. Retaliation Claim

Nyholm contends that her termination was retaliatory based on 42 U.S.C. § 2000e-3(a), which provides that it is an unlawful employment practice for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter."  To establish a *prima facie* case of retaliation, Nyholm must show she engaged in a protected activity, that she suffered an adverse employment action, and that there was a causal connection between the two.  *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002).

Nyholm's retaliation claim fails to meet this standard.  First, Nyholm does not make clear whether or how she opposed an unlawful employment practice.  Rather, her claim of retaliation is based on the same allegations of pregnancy discrimination discussed above.  Second, Nyholm indicated at her deposition that the only fact supporting her retaliation claim was that Foote shunned her.  Even assuming that this constituted adverse employment action, Nyholm asserted at her deposition that the shunning was not related to her pregnancy and occurred after she received performance-related discipline.  Therefore, Nyholm has failed to establish a causal

connection between protected activity and any adverse consequences.  The Court grants

IPM summary judgment regarding this claim as well.

**B.      Wrongful Termination**

Nyholm asserts a claim for wrongful termination, alleging generally that her

termination contravened Minnesota public policy.  Minnesota recognizes a very narrow

common law claim for wrongful termination in violation of public policy.  To state a

claim for common law wrongful discharge, the employee must show that he or she was

discharged for "refusing to participate in an activity that the employee, in good faith,

believes violates any state or federal law or rule or regulation adopted pursuant to law."

*Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn. 1987); *Nelson v.*

*Productive Alternatives, Inc.,* 715 N.W.2d 452, 455 (Minn. 2006).  Nyholm has not

alleged or shown that she engaged in such an action.  Therefore, the Court grants

summary judgment to IPM as to Nyholm's wrongful termination claim.

**C.      Intentional Infliction of Emotional Distress**

To prove a claim of intentional infliction of emotional distress, Nyholm must

show that IPM's conduct:  (1) was extreme and outrageous; (2) was intentional or

reckless; (3) caused emotional distress; and that the emotional distress (4) was severe.

*Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438-39 (Minn. 1983) (recognizing

an independent tort of intentional infliction of emotional distress).  This standard of proof

is a "high threshold" and for conduct to be actionable, the conduct must be "so atrocious

that it passes the boundaries of decency and is utterly intolerable to the civilized

community."  *Id.* at 439 (quoting *Haagenson v. Nat'l Farmers Union Prop. and Cas. Co.,*

277 N.W.2d 648, 652 n.3 (Minn. 1979)).  A claimant must prove that his or her mental distress was so severe "that no reasonable [person] could be expected to endure it."  *Id.* at 439.  The cause of action for intentional infliction of emotional distress is "sharply limited to cases involving particularly egregious facts."  *Id.*

Nyhom has not met her burden with respect to this claim.  Though Nyholm disputes the reasons for her termination, she has not shown that her treatment at IPM or the circumstances of her termination were extreme or outrageous or that they were intentional and reckless, as contemplated by the standard of proof for a claim of intentional infliction of emotional distress.

Further, Nyholm's testimony at her deposition does not support the claim that she suffered severe emotional distress.  Nyholm testified that she suffered emotional distress after her termination due to her "family hardship," which resulted from her decrease in income.  (Weiss Decl. ¶ 7, Ex. F at 226-227.)  Nyhom testified that she received a psychological referral but that she did not pursue counseling because she could not afford the co-pay for the appointment.  She also testified, however, that she did not seek psychological counseling of any kind after her termination, explaining:  "I guess I didn't feel I needed it."  (*Id*. at 216-17.)  Nyholm testified that she did not receive treatment from any physician for her emotional distress and did not take any medication for any symptoms resulting from emotional distress.  Her deposition also included the following colloquy:

> Q.    Other than the family hardship that you've described, what other evidence do you have that you suffered emotional distress as a result of your termination?

A.      I'm not sure.

Q.      As you sit here today, are you aware of anything else that constitutes
        your emotional distress?

A.      No, I am not.

(*Id*. at 227.)

Though Nyholm's termination undoubtedly caused her family financial strain and

caused her to experience some level of stress and anxiety, her level of emotional distress

does not approach the high standard necessary to assert a successful claim. The Court

grants summary judgment to IPM on this claim.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant IPM's Motion for Summary Judgment (Doc. No. 14) is

**GRANTED**.

2.      Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 21, 2009                      s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge